IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES DAVID KING, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | FILE NO.: CL14000127-00 |
| ) | |
| BLACKPOWDER PRODUCTS, ) | |
| INC., ) | |
| ) | |
| and ) | |
| ) | |
| WAL-MART STORES EAST, LP, ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

INTRODUCTION

In 2001, Plaintiff Charles King ("Plaintiff") purchased a muzzleloading rifle from Defendant Wal-Mart. While firing the muzzleloader in 2010, the barrel ruptured injuring his left hand. Plaintiff's Complaint contains nine separate counts. Defendants collectively move for partial summary judgment on Count II (Plaintiff's express warranty count), Count VII, (Plaintiff's Virginia Consumer Protection Act misrepresentation claim), Count VIII, (Plaintiff's count seeking punitive damages), and Count IX, (Plaintiff's strict liability count).

Initially it is undisputed that Wal-Mart made no representations whatsoever, particularly express representations, and therefore, Plaintiff's express warranty

1

claim fails as to Wal-Mart. Plaintiff's express warranty claim against Defendant BPI arises from the owner's manual and allegedly markings on the barrel. Not only did neither form a basis of the bargain, (Plaintiff admits he never even read the manual, and the facts are undisputed, Defendant BPI never placed any mark on the barrel), but Plaintiff did not rely upon any such representation in purchasing the gun.

Plaintiff alleges in his Complaint that the barrel bore a proof mark from the House of Eibar in Spain, which he alleges represented that the barrel had been proof tested. Plaintiff contends that this mark was a violation of the Virginia Consumer Protection Act because the muzzleloader was never individually proof fired by the House of Eibar. Plaintiff's claim in that regard fails as a matter of law for a number of independent reasons: Neither Defendant placed the mark on the barrel; the mark does not represent what Plaintiff claims; discovery has closed and Plaintiff cannot prove his allegations in that regard; and the causal link is missing in any event.

With respect to punitive damages, Plaintiff has provided no evidence of acts or omissions by either Defendant to support his claim that any alleged conduct was so egregious as to justify the imposition of punitive damages, and the undisputed evidence shows no such conduct.

Finally, Virginia law is clear that there is no cause of action in strict liability under these circumstances. Accordingly, Defendants seek partial summary judgment on those four Counts of Plaintiff's nine-Count Complaint.

STATEMENT OF MATERIAL FACTS

Prior to purchasing the CVA brand muzzleloader at issue, Plaintiff owned a similar CVA muzzleloader that he testified "was a real good gun." *King Dep.*, pp. 65:25 – 66:6. Plaintiff was "pleased to death" with the other CVA muzzleloader, and because it had proven itself to him, he wanted to purchase another CVA muzzleloader. *Id.* at p. 81:4-23. Plaintiff went to Wal-Mart for the specific purpose of purchasing a CVA muzzleloader for his daughter. *Id.* at p. 83:2-5. He testified he purchased the subject CVA muzzleloader because of his history and happiness with the prior CVA muzzleloader. *Id.* at p. 82:20-21. No Wal-Mart employees made any representation to Plaintiff about the gun. *Id.* at pp. 83:14-84:9, 215:8-11. The gun came with a manual, which Plaintiff admitted he did not read. *Id.* 88:17-21. Instead, Plaintiff threw the manual away. *Id.*

It is undisputed there are markings on the barrel. Plaintiff's expert does not know what the markings represent. *Dowling Dep.*, p. 88:25 – 89:6. Neither Plaintiff nor his expert have any information about tests performed by Dikar or the Spanish national proof house on these types of barrels. *King Dep.*, pp. 202:18 – 203:3; *Dowling Dep.*, p. 138:6-14. Plaintiff's expert has no information or

evidence regarding any regulations, rules or statutes related to the design or manufacture of the muzzleloader in this case. *Dowling Dep.*, p. 135:3-9. Specifically, Plaintiff's expert is not aware of any regulations, rules or statutes governing the testing of muzzleloaders sold in the United States. *Id*. at p. 135:14-20.

Dikar S. Coop ("Dikar"), of Spain manufactured the subject muzzleloader. *See Defendant Blackpowder Products, Inc.'s Responses to Plaintiff's First Interrogatories*, No. 1. The Spanish government required Dikar to submit five muzzleloaders produced every month for substantial overpressure firing and further laboratory testing, rather than submitting every muzzleloader produced. *Id*. at No. 4. The Spanish government mandates that Dikar place the markings on all muzzleloaders made for sale in the United States, prior to shipping. *McGarity Dep*., pp. 62:18 – 63:8. The undisputed fact is that the markings are placed on the guns by Dikar because they are required to be so marked, which is not within either Defendants' control. *Id*. Contrary to Plaintiff's allegations, the testimony is that the markings on the barrel indicate the rifle design was approved by the Spanish National Proof House. *McGarity Dep.,* p. 63:1-4.

Relevant to Plaintiff's punitive damage claim, a prototype of the gun was fired 100 times with a magnum load (more than the Plaintiff here used). *Guyer Dep.,* pp. 130:21 – 131:2; *Defendant Blackpowder Products, Inc.'s Responses to*

*Plaintiff's First Interrogatories*, No. 4. In addition, a prototype barrel was fired 10 times at substantial overpressure tests in excess of 41,000 p.s.i. *Id.* The Spanish National Proof House requires that five guns per month from Dikar's production be subjected to substantial overpressure testing. *Id.* As mentioned previously, Plaintiff had a similar gun, and not only had no problem with it, but thought it was an excellent gun. *King Dep.*, pp. 65:25 – 66:6. In addition, various employees of BPI shot the same model guns on numerous occasions at company functions, and with sports writers and other individuals. *Defendant Blackpowder Products, Inc.'s Responses to Plaintiff's First Interrogatories*, No. 4; *McGarity Dep.*, pp. 76:4 – 77:5.

ARGUMENT AND CITATION TO AUTHORITIES

**I.    No Express Warranties were a Basis of the Bargain.**

Count II of Plaintiff's Complaint is one alleging liability as a result of express warranties. Quite simply, the testimony of Plaintiff is undisputed that no one at Wal-Mart made any express warranties. *Id.* at pp. 83:14-84:9, 215:8-11. He traveled to Wal-Mart for the purpose of purchasing the gun that he did, which was like one he previously had. *Id.* at p. 83:2-5. No one at Wal-Mart told him anything about the gun or made any representations either way. *Id.* at pp. 83:14-84:9, 215:8-11.

Plaintiff contends that the documentation provided with the rifle and the markings on the barrel of the rifle constituted an express warranty *Complaint*, p. 24. Under Va. Code § 8.2-313, to constitute an express warranty, a seller must make "*some* affirmative statement or promise regarding the condition of the item sold." *Richard v. Wal-Mart Stores, Inc.*, 1997 WL 578710, No. 96-0011-C (W.D.Va. Aug. 25, 1997). In *Richard v. Wal-Mart Stores, Inc.*, the trial court properly granted summary judgment when the plaintiff bought a kettle because it was pretty, without seeking any counsel or advice from a Wal-Mart representative. Here it is undisputed Defendant BPI did not place any mark on the barrel. *McGarity Dep.,* pp. 61:24 – 62:6. He did not read the manual that came with the muzzleloader. *Id*. at p. 88:17:21. Instead, Plaintiff threw the manual away. *Id*. Therefore, there were no applicable express warranties provided by either Defendant.

Moreover, an express warranty must have been made part of the basis of the bargain to be actionable. Va. Code § 8.2-313. The undisputed evidence shows that Plaintiff planned to purchase the muzzleloader irrespective of any alleged warranties. Prior to purchasing the muzzleloader at issue, Plaintiff owned a similar muzzleloader that "was a real good gun." *King Dep*., pp. 65:25 – 66:6. Plaintiff was "pleased to death" with the other CVA muzzleloader, and because it had proven itself to him, he wanted to purchase another CVA muzzleloader. *Id*. at p.

6

81:4-23. Plaintiff went to Wal-Mart specifically to purchase a CVA muzzleloader for his daughter. *Id*. at pp. 82:23 – 83:5. Rather than any warranty becoming the basis of the bargain, then, the evidence is undisputed that the reason Plaintiff purchased the subject muzzleloader was because of his history and happiness with his other CVA muzzleloader. *Id*. at p. 82:20-21.

As it is undisputed neither Defendant made any express warranties to Plaintiff, and even if either Defendant had, those warranties did not form the basis of the bargain, this Court should grant partial summary judgment and dismiss Plaintiff's express warranty claim against both Defendants.

## II. Both Defendants are entitled to summary judgment on Plaintiff's Virginia Consumer Protection Act claim.

The Virginia Consumer Protection Act ("VCPA"), *The Code of Virginia*, § 59.1-198, *et seq*., prohibits a supplier in connection with a consumer transaction from "[m]isrepresenting the source, sponsorship, approval or certification of goods or services." Va. Code § 59.1-200(A)(2). Defendants are entitled to summary judgment here because: (1) the undisputed facts show they did not make any representations, and even if the alleged mark was a misrepresentation, Defendants had no control over the placement of the mark on the barrel, relieving them of liability under Va. Code § 59.1-207; (2) The facts are undisputed the marks do not mean what Plaintiff contended in the Complaint they mean, and further, Plaintiff

has no proof the marks represent what he alleges; and (3) Plaintiff cannot prove cause as he did not legitimately rely to his detriment upon any alleged misrepresentation, as required by the VCPA, nor is there any evidence that had the mark allegedly meant what Plaintiff alleges, the incident would not have occurred.

### A. Neither Defendant made any misrepresentation.

Under Va. Code § 59.1-200(A)(2), Plaintiff must prove the *supplier* made a *misrepresentation* related to the source, sponsorship, approval or certification of the muzzleloader. Plaintiff alleges that the marking on the barrel constitutes such a misrepresentation. *Complaint*, ¶ 45. The undisputed evidence shows that Dikar, the Spanish manufacturer of the muzzleloader, rather than either Defendant, placed the marking on Plaintiff's rifle. *McGarity Dep.*, pp. 61:24 – 62:2. Neither Defendant placed any marks on the muzzleloader. *Id*.

Additionally, pursuant to Va. Code § 59.1-207, a supplier shall not be liable under the VCPA when "(i) the act or practice alleged to be in violation of § 59.1-200 or 59.1-200.1 was an act or practice of the manufacturer or distributor to the supplier over which the supplier had no control." The undisputed facts show that Defendants had no control over the marking. *McGarity Dep.*, pp. 62:18 – 63:8. Partial summary judgment is therefore proper for both Defendants on that Count of Plaintiff's Complaint.

**B. The marks were not misrepresented, and Plaintiff has no evidence that they were.**

Not only were the marks placed on the barrel by an entity other than either Defendant, over whom neither Defendant had any control, but the undisputed evidence also shows that the marks were not a misrepresentation. The Spanish government mandates that Dikar place the markings on all muzzleloaders made for sale in the United States, prior to shipping. *McGarity Dep.*, pp. 62:18 – 63:8. The testimony is undisputed that the marks simply represent that the design was approved by the House of Eibar. *McGarity Dep.*, p. 63:1-4. The Spanish government requires Dikar to submit for substantial overpressure proof firing and further laboratory testing, five muzzleloaders produced every month, not every gun produced. *See Defendant Blackpowder Products, Inc.'s Responses to Plaintiff's First Interrogatories*, No. 4.

Discovery has expired. The Plaintiff has long ago provided his expert report, and that expert has been deposed. Plaintiff significantly has no admissible evidence to prove what the marks represent. Plaintiff's expert does not know what the marking represents. *Dowling Dep.*, p. 88:25 – 89:6. Plaintiff's expert has no information or evidence regarding any regulations, rules or statutes related to the design or manufacture of the muzzleloader in this case. *Dowling Dep.*, p. 135:3-9. Plaintiff's expert is not aware of any regulations, rules or statutes governing the

testing of muzzleloaders sold in the United States. *Id*. at p. 135:14-20. Plaintiff contends simply that his grandfather told him a proof mark means every gun has been tested, but neither Plaintiff nor his expert have any information about tests performed by Dikar or the Spanish national proof house on these types of barrels, nor that the mark represents a "proof mark" as described by Plaintiff's grandfather years ago. *King Dep.*, pp. 212:21 – 213:19, 202:18 – 203:3; *Dowling Dep.*, p. 138:6-14.

### C. Plaintiff cannot prove cause in any event.

Under the VCPA, Plaintiff must prove that the purported unlawful conduct caused the loss. *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 188-89 (E.D.Va. 2005). Initially, under the VCPA, just as with a common law fraud claim, an essential element Plaintiff must show is that he relied upon Defendants' purported misrepresentation, in order to recover. *Owens*, 288 Va. at 498. Virginia courts grant summary judgment when a Plaintiff cannot show reliance. *Adardour v. American Settlements, Inc.*, 2009 WL 1971458, No. 1:08CV798 (E.D.Va. July 2, 2009).

Prior to purchasing the muzzleloader at issue, Plaintiff owned a similar CVA muzzleloader that Plaintiff described "was a real good gun." *King Dep*., pp. 65:25 – 66:6. Plaintiff was "pleased to death" with the other CVA muzzleloader, and because it had proven itself to him, he wanted to purchase another CVA

muzzleloader. *Id*. at p. 81:4-23. Plaintiff went to Wal-Mart specifically to purchase a CVA muzzleloader. *Id*. at p. 83:2-5. Rather than "relying" on the marking on the barrel to decide whether to purchase any gun, or a CVA gun over another model, or this gun over another gun, the testimony reflects the sole reason Plaintiff purchased the subject muzzleloader was because of his history and happiness with CVA muzzleloaders. *Id*. at p. 82:20-21.

Under the VCPA, reliance must be objectively reasonable. *Bailey v. Grass*, 2004 WL 3000944, No. LP-2758-1 (E.D.Va. June 24, 2004); *Meridian Title Ins. Co. v. Lilly Homes, Inc.*, 735 F.Supp.2d 182, 186 (E.D.Va. 1990). Plaintiff's only basis for his contention that the markings meant his individual barrel was tested was that his grandfather told him years ago, with respect to an unknown mark, on an unknown product, of an unknown type, by an unknown manufacturer, located in an unknown location, that a mark reflected a product "gun, a tool, or whatever it is" had been tested. *King Dep.*, pp. 212:21 – 213:19, 202:18 – 203:3; *Dowling Dep.*, p. 138:6-14. Even his expert does not know what the marking means. *Dowling Dep.*, p. 88:25 – 89:6. Relying on a grandfather's statement years ago as to the meaning of a generic marking on another product, when there is no evidence that he had any knowledge of Spanish or American law as to marking, particularly compared to the undisputed sworn facts in this case as to the meaning, does not constitute reasonably prudent reliance as a matter of law sufficient to create an

11

issue of fact. This is particularly true when, here, Plaintiff admits no one told him the marks on his gun mean the individual barrel was tested. *King Dep.*, p. 213:5-6.

And, even if a fact issue exists whether Plaintiff reasonably relied on Defendants' purported misrepresentation, Plaintiff cannot prove a causal connection between his injury and the marking, as required by Virginia law. *Blount v. Greenbrier Pontiac Oldsmobile-GMC Trucks Kia, Inc.*, 2009 WL 2431587 *5, No. 3:08CV622 (E.D.Va. Aug. 7, 2009); *Padin v. Oyster Point Dodge*, 397 F.Supp.2d 712, 722 (E.D.Va. 2005). Plaintiff testified that he fired the muzzleloader six or seven times prior to the incident. *King Dep.*, p. 56:21-22. Plaintiff's expert (which Defendant has moved to exclude on *Daubert* grounds), holds the opinion that the failure was a result of a cumulative firing of the barrel over the ten years of firings. *Dowling Dep.*, p. 36:7-10. Given that Plaintiff fired the muzzleloader numerous times prior to this incident, neither Plaintiff nor his expert have identified an alleged proof test that would have uncovered any purported defect, and when Plaintiff's expert's opinion is that the failure was of a cumulative nature, Plaintiff has no admissible evidence that the failure to test the individual muzzleloader led to or caused his injuries. As such, Plaintiff's claim fails as a matter of law independently on that basis as well.

### III. Plaintiff's punitive damages claim in Count VIII fails as a matter of law against both Defendants.

Defendant has simultaneously herewith filed a Motion for Sanctions as a result of spoliation of the evidence, and further, a *Daubert* motion to exclude Plaintiff's expert opinion testimony. Wholly ignoring those motions, and the factual basis therefore, Defendants are regardless entitled to a motion for partial summary judgment as to Plaintiff's claim for punitive damages.

Defendant has alleged in Count VIII that Defendants' acts constituted willful and wanton behavior and evinced a reckless disregard for Plaintiff's safety. However, Virginia jurisprudence does not favor imposing punitive damages, and they will only be awarded in cases exhibiting the most egregious conduct. *Sykes v. Bayer Pharmaceuticals Corp.*, 548 F.Supp.2d 208 217-18 (E.D.Va. 2008). A defendant's conduct must be malicious, reckless, or so negligent that it evinces a conscious disregard of the rights of others. *Id.* To satisfy these standards, a defendant's conduct must go beyond gross negligence and approach criminal recklessness. *Cumming by Cummings v. Fisher-Price, Inc.*, 857 F.Supp. 502, 505-06 (W.D.Va. 1994). In *Cummings by Cummings*, a child rode a tricycle down a slope into oncoming traffic. The plaintiff alleged that the tricycle was defective because it contained no brakes or visibility devices, and the toy provided inadequate warnings. The trial court properly granted summary judgment because

Plaintiff could show, at the very best, negligence. *Id. See also Ford Motor Co. v. Bartholomew*, 224 Va. 421, 436-38, 297 S.E.2d 675 (1982) (defendant's rejection of alternative designs did not support a punitive damage award as a matter of law).

Here, Plaintiff has not identified any specific acts or omissions satisfying the high standard required for the imposition of punitive damages in his pleadings. Further, discovery has ended, and Plaintiff cannot identify any facts that indicate any egregious conduct by Defendants, even if his allegations are assumed to be true. *Plaintiff*'s *Answers to Wal-Mart's First Interrogatories*, Interrogatory No. 1. *See generally* Peter Nash Swisher, Robert E. Draim, and David D. Hudgins, VA. PRAC. TORT AND PERSONAL INJURY LAW § 15:46 (June 2015).

Dikar, the manufacturer, conducted extensive testing and test firing on the design of this muzzleloader, and additionally five barrels per month from production are subject to substantial overpressure testing by the Spanish government. *Defendant Blackpowder Products, Inc.'s Responses to Plaintiff's First Interrogatories*, No. 4. Moreover, though it is undisputed neither Defendant designed nor manufactured the product at issue, the undisputed evidence shows that Defendant BPI conducted extensive firings of the rifles to ensure function and fit prior to production, and by employees thereafter. *Defendant Blackpowder Products Inc.'s Responses to Plaintiff's First Interrogatories*, No. 4; *McGarity Dep.*, p. 76:4-23. Plaintiff and his expert admitted they do not have any

14

information about tests performed by Dikar or the Spanish National Proof House on these types of barrels. *King Dep.*, pp. 212:21 – 213:19, 202:18 – 203:3; *Dowling Dep.*, p. 138:6-14. And, for four or five years prior to purchasing the subject muzzleloader, Plaintiff owned and used a similar muzzleloader. *King Dep.*, pp.64:20 – 66:11. He said it was "a real good gun" and he never had any problems with it. *Id.* at pp. 65:25 – 66:3. The sole reason Plaintiff chose to purchase the subject rifle was his experience and happiness with the muzzleloader as a product. *Id.* at p. 82:20-21.

Even assuming Plaintiff's allegations, then, and giving every possible reasonable inference to the Plaintiff, the evidence in this case simply does not rise to the level of such egregious conduct approaching criminal recklessness sufficient to satisfy an award of punitive damages. Plaintiff has presented no evidence of specific acts or omissions, and cannot survive summary judgment resting on generalities in his pleadings. As a result, this Court should dismiss Plaintiff's claims for punitive damages against both Defendants.

**IV. Plaintiff's strict liability claim in Count IX fails as a matter of law against both Defendants.**

Count IX of Plaintiff's Complaint alleges that Defendants are strictly liable for Plaintiff's injuries. It is well-settled in Virginia law that strict liability is not recognized as a cause of action in product liability cases. *Sensenbrenner v. Rust,*

*Orling & Neale, Architects, Inc.*, 236 Va. 419, 374 S.E.2d 55, 57 n. 4 (1988); *Sanyal v. Toyota Motor North America, Inc.*, 2015 WL 236649, No. 1:14CV960 (E.D.Va. Jan. 15, 2015); *Quillen v. SteriSystems Corp.*, 2005 WL 387649, No. 1:004CV00139 (W.D.Va. Feb. 17, 2005). Because Virginia does not recognize this cause of action, Plaintiff's strict liability claim must be dismissed.

## CONCLUSION

Defendants have shown there is no genuine issue of material fact with respect to several of Plaintiff's claims. First, neither Defendant made any express warranties to Plaintiff, and, regardless, Plaintiff had pre-determined he was buying a CVA muzzleloader based on his experience with prior CVA products, so no possible alleged express warranty became a basis of the bargain. Second, Plaintiff's VCPA claim fails as a matter of law because Defendants did not make any misrepresentations, any alleged misrepresentations were not within Defendants' control, the undisputed facts are that the marks are not misrepresentations, and Plaintiff has no evidence they are, and regardless, Plaintiff cannot show a causal link between his alleged wrongdoing and the injury. Third, Plaintiff has failed to provide any evidence that Defendants' conduct was so egregious as to warrant punitive damages, particularly when the undisputed evidence is that neither Defendant designed or manufactured the subject muzzleloader. Finally, Virginia does not recognize a cause of action for strict

liability in product cases. Thus, Defendants are entitled to partial summary judgment on Counts II, VII, VIII, and IX as a matter of law.

This 16th day of May, 2016.

>  */s/ James E. Singer*_____
> **JAMES E. SINGER**
> (Admitted *Pro Hac Vice*)
> **BOVIS, KYLE, BURCH & MEDLIN, LLC**
> 200 Ashford Center North, Suite 00
> Atlanta, GA 30338-2668
> Telephone: (770) 391-9100
> Facsimile: (770) 668-0878
> jes@boviskyle.com
>
> and
>
> **WALTER H. PEAKE, III**
> Virginia Bar No. 26379
> **FRITH, ANDERSON & PEAKE, P.C.**
> 29 Franklin Rd., S.W.
> Roanoke, VA 24011
> Telephone: (540) 725-3362
> Facsimile: (540) 772-9167
> wpeake@faplawfirm.com
>
> *Attorneys for Defendants Blackpowder Products, Inc. and Wal-Mart Stores East, LP*

# CERTIFICATE OF SERVICE

I hereby certify the foregoing ***Defendants' Motion For Partial Summary Judgment On Plaintiff's Virginia Consumer Protection Act Misrepresentation Claim*** has been served on all counsel via e-mail using the CM/ECF filing system, which will send notification of such filing to the following attorneys of record:

Joseph H. McGrady, Esq.
McGrady & McGrady
127 Mill Street
Hillsville, VA  24343
joseph@mcgradylaw.com

Timothy E. Kirtner, Esq.
Gilmer, Sadler, Ingram, Sutherland & Hutton
P. O. Box 878
Pulaski, VA 24301
tkirtner@gsish.com

This 16th day of May, 2016.

>  */s/ James E. Singer*_____
>  **JAMES E. SINGER**
>  (Admitted *Pro Hac Vice*)
>  **BOVIS, KYLE, BURCH & MEDLIN, LLC**
>  200 Ashford Center North, Suite 500
>  Atlanta, GA 30338-2668
>  Telephone: (770) 391-9100
>  Facsimile:   (770) 668-0878
>  jes@boviskyle.com
>
>  *One of the Attorneys for Defendants Blackpowder Products, Inc., and Wal-Mart Stores East, LP*