CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 22 2016

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES DAVID KING, JR., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:15-CV-00212 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| BLACKPOWDER PRODUCTS, | ) By: Hon. Glen E. Conrad |
| INC., et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Charles David King, Jr. brings this diversity action against Blackpowder Products, Inc. ("Blackpowder"), Wal-Mart Stores East, LP ("Wal-Mart"), and Dikar S. Coop., LTDA. ("Dikar"), seeking recovery for an injury that King sustained while using a 50 caliber muzzleloader. The case is presently before the court on defendants' motion for partial summary judgment. For the reasons set forth below, the motion will be granted in part and denied in part.

### Factual Background

The following facts are either undisputed or, where disputed, presented in the light most favorable to the plaintiff. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (emphasizing that courts must view the evidence on summary judgment in the light most favorable to the nonmoving party).

King is a resident of Carroll County, Virginia. He is an avid hunter and owns between 30 and 35 guns, including three muzzleloaders. Defendant Blackpowder is a Georgia corporation with its headquarters in Duluth, Georgia. Defendant Wal-Mart is a Delaware limited partnership with its headquarters in Bentonville, Arkansas. Defendant Dikar is a Spanish corporation with its headquarters in Bergara, Gipuzkoa, Spain.

In October of 2001, King purchased a "Connecticut Valley Arms Staghorn" 50 caliber muzzleloader (the "rifle") from a Wal-Mart store in Galax, Virginia. Compl. ¶ 10. The rifle was manufactured by Dikar and distributed in the United States by Blackpowder.

On October 28, 2010, Jody Norman, King's teenage neighbor, asked if he could borrow a muzzleloader. King agreed to lend Norman the rifle, but wanted to test fire it first. That same day at approximately 3:00 p.m., King cleaned the rifle and loaded it with two 50 grain Pyredex pellets and a 50 caliber bullet, in a manner consistent with the instructions provided with the rifle. King then fired the rifle at a target 100 yards away. King again cleaned the rifle and loaded it with two 50 grain Pyredex pellets and a 50 caliber bullet. When King pulled the trigger, the rifle barrel ripped apart near his left hand. The explosion caused plaintiff to lose his left thumb and index finger, leaving him permanently deformed and disfigured. He suffered severe pain, emotional anguish, and embarrassment due to his injuries, which required extensive medical care and treatment. King also suffered loss of income, as he was unable to work for a period of time.

On April 23, 2014, King filed a complaint against defendants in the Circuit Court for Carroll County, Virginia. Defendants removed the case to this court on May 5, 2015, claiming that jurisdiction was proper under 28 U.S.C. § 1332. In the complaint, King asserts nine counts including: (1) negligence (Count I); (2) breach of express warranties (Count II); (3) breach of implied warranties (Count III); (4) breach of implied warranty of merchantability (Count IV); (5) breach of implied warranty of fitness for a particular purpose (Count V); (6) failure to warn (Count VI); (7) violation of the Virginia Consumer Protection Act, Virginia Code § 59.1-200 (Count VII); (8) willful or wanton conduct (Count VIII); and (9) strict liability (Count IX). King seeks compensatory damages in the amount of $1,500,000.00, treble damages under Virginia Code § 59.1-204(A), punitive damages in the amount of $350,000.00, attorney's fees and costs,

2

and any other equitable relief. On May 16, 2016, Blackpowder and Wal-Mart filed a motion for partial summary judgment as to Counts II, VII, VIII, and IX.[1] The court held a hearing on the motion on June 30, 2016. The motion has been fully briefed and is now ripe for disposition.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248).

In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in her favor. Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks omitted).

## Discussion

Blackpowder and Wal-Mart move for partial summary judgment as to Counts II, VII, VIII, and IX. King does not oppose the motion as to Counts VII, VIII, and IX against Blackpowder and Wal-Mart, as well as Count II against Wal-Mart. His sole argument in opposition to the motion for partial summary judgment is that there remains a genuine dispute of material fact as to whether Blackpowder breached an express warranty.

---

[1] Dikar has not been served with process and, thus, did not join in the motion for partial summary judgment.

3

It is undisputed that Virginia law provides that "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Va. Code § 8.2-313(1)(a). Furthermore, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id. § 8.2-313(1)(b). It is not necessary that the seller use formal words such as "warrant" or "guarantee," or that it have the specific intention to make a warranty. Id. § 8.2-313(2). However, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Id.

Blackpowder argues that it is entitled to summary judgment as to Count II because it did not make any express warranty to King. "For an express warranty to attach to the sale of a product, however, at least some affirmative statement or promise regarding the condition of the item sold must have been made by the product's manufacturer or seller." Richard v. Wal–Mart Stores, Inc., No. CIV. A. 96–0011–C, 1997 WL 578710, at *7 (W.D. Va. Aug. 25, 1997) (Michael, J.) (emphasis in original). The record reflects that the rifle's barrel bore a stamp indicating that it was "magnum" rated, and that the warranty booklet that accompanied the rifle informed purchasers that the rifle could handle a magnum load up to 150 grains of powder. It is undisputed that Dikar, not Blackpowder, placed the "magnum" stamp on the rifle. However, it is also undisputed that Blackpowder was involved in drafting the manual. Blackpowder offers no evidence to show that the "magnum" language in the manual was a mere statement of opinion. In fact, "if one who has superior knowledge makes a statement about the goods sold and does not qualify the statement as his opinion, the statement will be treated as a statement of fact." Daughtrey v. Ashe, 413 S.E.2d 336, 338 (1992).

4

The court believes that Blackpowder had superior knowledge as to the firing capabilities of the rifle and did not qualify its "magnum" description as an opinion. Moreover, Blackpowder has cited to no evidence to show that the description represented the value of the rifle. As the language in the manual is sufficient to establish that Blackpowder made an affirmative statement of fact that the rifle could handle up to 150 grains of powder, the court need not decide whether the "magnum" stamp on the rifle's barrel constitutes an affirmative statement of fact that may be attributed to Blackpowder.

The court must next decide whether such affirmative statement formed the basis of the bargain, as to constitute an express warranty. Blackpowder contends that none of its representations about the rifle formed the basis of the bargain with King. It is undisputed that King had already planned to purchase a muzzleloader when he went to Wal-Mart, as he had a good experience with a similar gun he owned, and that King did not read the manual that accompanied the rifle. However, the United States Court of Appeals for the Fourth Circuit has found that "[i]t is unnecessary that the buyer actually rely upon" a description of the product for such statement to be part of the basis of the bargain. Martin v. Am. Med. Sys., Inc., 116 F.3d 102, 105 (4th Cir. 1997). In so holding, the Fourth Circuit examined Daughtrey v. Ashe, 413 S.E.2d 336 (Va. 1992). In Daughtrey, the plaintiff went to a jeweler to purchase a diamond bracelet for his wife. Id. at 336-37. The jeweler described the diamonds as "nice" and told the plaintiff that he could receive a refund if he was later dissatisfied. Id. at 337. The jeweler then completed an appraisal form for the bracelet, which described the diamonds as "v.v.s. quality," one of the highest ratings for diamonds. Id. At the time of purchase, he placed the appraisal form in the jewelry box with the bracelet. Id. The plaintiff later learned that the diamonds were not v.v.s. quality and sued the jeweler for breach of an express warranty. Id. After finding that

5

"v.v.s. quality" did not constitute the jeweler's opinion or the appraised value of the diamonds, the Court held that it was not necessary for the plaintiff to show that he was aware of the "v.v.s. quality" description for such statement to become part of the basis of the bargain with the jeweler. Id. at 338. Instead, "[t]he express warranty inquiry focuses on what it is that the seller agreed to sell, and, absent clear proof that the parties did not intend their bargain to include the seller's description of the goods, that description is an express warranty." Martin, 116 F.3d at 105 (citing Daughtrey, 413 S.E.2d at 338-39); see also Yates v. Pitman Mfg., Inc., 514 S.E.2d 605, 607 (Va. 1999) ("[A]ny fact that would remove [an] affirmation out of the agreement requires clear affirmative proof." (internal quotation marks omitted)).

Here, Blackpowder has not presented clear evidence that would remove the rifle's "magnum" description from its agreement with King. Therefore, this affirmation of fact is presumed to be part of the parties' bargain, even though King did not read the manual, and constitutes an express warranty to King as to the rifle's firing capability.[2] Accordingly, the motion for partial summary judgment will be denied as to Count II against Blackpowder.

## Conclusion

For the foregoing reasons, the court will grant in part and deny in part the motion for partial summary judgment. The motion will be granted as to Counts VII, VIII, and IX against Blackpowder and Wal-Mart and as to Count II against Wal-Mart. The motion will be denied as to Count II against Blackpowder. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 22d day of July, 2016.

_____
Chief United States District Judge

---

[2] The court, however, offers no opinion as to the merits of the breach of express warranty claim against Blackpowder, as that issue is not currently before it.